### RYAN *et al. v.* HARD *et al.*

*(Circuit Court, N. D. New York. August 13, 1888.)*

PATENTS FOR INVENTIONS—INFRINGEMENT—WOVEN-WIRE BED-BOTTOMS.
 Letters patent No. 241,321, granted to C. H. Dunks and J. B. Ryan, May 10, 1881, for an improvement in swing woven-wire bed-bottoms, which consists in attaching the woven-wire fabric to a swinging cross-bar suspended by helical springs from the end rails of the bedstead, are void for want of novelty, the invention being but the substitution of one well-known material for another.

In Equity.

Action by James B. Ryan and another against Charles H. Hard and another, to restrain infringement of letters patent No. 241,321.

*Leonard B. Sutro,* for complainants.

*James B. Jenkins,* for defendants.

COXE, J. This is an equity action, founded upon letters patent No. 241,321, granted to C. H. Dunks and J. B. Ryan, May 10, 1881, for an

improvement in "swing woven-wire bed-bottoms." The essential feature of the invention consists in attaching the woven-wire fabric to a swinging cross-bar, which in turn is suspended by helical springs from the end rails of the bedstead. The patentees assert that by this arrangement are secured all the advantages of a swinging bed,—elasticity, durability, and resiliency,—while sagging in the center, and the sudden jerky motion, common in some bed-bottoms, are avoided. The claims in question are as follows:

"(1) In, a bed-bottom, the combination, with an end rail, of the links or springs, the section of woven-wire fabric, and an intermediate connecting transverse bar, provided upon one edge with a throat adapted to receive the ends of the wire, and upon the opposite side with means of attaching the links or springs, substantially as described. (2) In a bed-bottom, the combination, with the end rail, of the links or springs, the section of woven-wire fabric, and an intermediate connecting bar consisting of a part to which the fabric is attached, and a part adapted to protect the mattress from contact with the ends of the wire, substantially as set forth."

Every element of the combination covered by these claims was concededly old and well known at the date of the patent. Woven-wire had been used for more than 25 years as a fabric for bed-bottoms. It had been stretched from end rail to end rail, and fastened by means very similar to that described in the patent. Bed-bottoms made of canvas, cord, sacking, and jointed links attached to "swing bars," had been suspended by helical springs in analogous combinations. If, for instance, a fabric of woven-wire were substituted for the canvas of the Loomis structure, it would probably be an exact anticipation of the complainants' combination. Is there patentable novelty in this change? It is thought not. If the patentees had been the first to introduce woven-wire into the art, there would be more difficulty in reaching this conclusion, but they were not. All that they did was to suspend a fabric, well known as a bed-bottom, in substantially the same manner that other fabrics, used for that purpose, had been suspended. If the patentees, instead of using woven-wire, had used some other woven fabric, woven twine or tape for example; if their claims had included carpet or rubber cloth instead of woven-wire,—it will hardly be contended that they would be entitled to take rank as inventors. Why, then, should the use of woven-wire give them this distinction? Its peculiar advantages, above referred to, as a material for beds, were not discovered by them. The idea of swinging a bed-bottom was not theirs. They have substituted one well-known material for another, and nothing more. It was thought, after reading the thorough and painstaking brief of the complainants' counsel, that the patent might be saved because of the peculiar character of the material, and the supposed difficulty of fastening it to the "swing-bars;" but this theory is untenable when it is remembered that it was fastened to the rigid end rails by similar devices, the changes being only those which would occur to a mechanic who had skill enough to adapt the heavy and cumbersome joint to the new circumstances. The court would feel more hesitancy in adopting this view had not the precise question,

upon facts very nearly parallel, been decided in *Ames* v. *Spring-Bed Co.*, 24 Fed. Rep. 785. At page 787, Judge BLODGETT, says:

"It is true that the fabric shown in the Simmons patent differs from that shown in the Kneppler and Boyington patent; but, after the introduction of the woven-wire fabric for bed-bottom purposes, there was no possible room for invention in substituting the woven-wire fabric for the wooden slat and wire fabric in Simmons' device; and, when that was done, you had exactly, in construction and mode of operation, the Boyington bed, and all there was of merit in the Kneppler bed."

This language is equally applicable to the case at bar. The bill must be dismissed.